# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | |
| ) | Case No. 2:10-cr-123-PPS |
| WILLIE HARRIS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

There are four motions presently before me brought by the defendant Willie Harris: 1) a Motion to Suppress Evidence (DE 306); 2) a Motion to Dismiss Due to the Government Allowing the Destruction or Disappearance of Exculpatory Evidence (DE 307); 3) a Motion to Dismiss Due to Improper Venue (DE 308); and 4) a Motion to Dismiss Due to Selective Prosecution (DE 309.) The Motion to Dismiss Due to the Destruction or Disappearance of Exculpatory Evidence (DE 307) will remain under advisement, and I'll take up each of the other three motions in turn. Because each motion will hinge on different facts, I'll include a discussion of the relevant background for each one.

## MOTION TO SUPPRESS

I'll start with the motion to suppress and spend most of my time on it. The motion asks me to suppress a notebook found in Harris's vehicle when he was taken into custody by the Munster police. Harris says that he didn't consent to the search of his truck and there were no exigent circumstances present to justify a warrantless search.

The government essentially responds by making three arguments. First, it denies that there was a search – it says that the arresting officer merely retrieved items from Harris's vehicle

1

as requested by one of his passengers. Second, the government says that even if the officer did conduct a search, then it was constitutionally permissible because the passenger consented to the removal of items from Harris's car. Finally, it says that even if the passenger didn't (or couldn't) consent to a search, the arresting officers had probable cause to search the vehicle.

I disagree with the first two arguments, but the last one is enough for me to deny the motion to suppress.[1] When the officer entered Harris's vehicle he conducted a search of it for Fourth Amendment purposes – why he did so is irrelevant. And Harris's passenger didn't have apparent authority over the vehicle, so she couldn't have consented to the search. However, the officer had probable cause to believe that contraband or evidence might be found in Harris's vehicle. His passenger had just been caught with multiple fraudulent credit cards and personal information about the names on those cards. Harris apparently had driven her to the bank for the purpose of committing fraud. Given those circumstances, the officer would have been reasonable to think that more evidence of the arresting offense might be found in the truck that drove her there. The fact that he wasn't actually looking for evidence doesn't change that outcome – indeed, in some ways it reinforces it.

Therefore, and for the reasons set forth below, the pending Motion to Suppress (DE 306) is **DENIED**.

---

[1] At a status hearing on April 4, 2013, I indicated that I was leaning towards granting the suppression motion. My main concern at the time was that I didn't think that the government had sufficiently raised the probable cause issue – their first brief simply stated that there was probable cause without citing any authority supporting that assertion. (DE 316 at 6.) However, after re-reviewing the briefing I have come to the view that the government properly preserved the issue although they certainly could have done a better job at fleshing the argument out.

**Relevant Background**

Here are the straight-forward facts relevant to the motion to suppress: Officers Michael Janiga and Kevin Cooley were dispatched to a Chase Bank branch on Ridge Road in Munster, Indiana. The bank had alerted the Munster Police Department that a woman, later identified as Darrielle Watkins,[2] was attempting to use a Bank of America Visa card to fraudulently obtain a cash advance. Officers Janiga and Cooley arrived on the scene. They were not the first officers to arrive; others were already there when they got to the bank. These first-arriving officers apparently had taken Harris into custody because he was sitting in the back of a squad car. It's a little unclear why he had been arrested, but presumably the officers suspected that he was involved in the fraud attempt that brought them to the bank. Harris's vehicle, a black GMC truck, was parked in a handicapped parking spot nearby.

Officers Janiga and Cooley went into the branch and took Watkins into custody. In addition to the fraudulent credit card, she had a second card with a different name on it, as well as a scrap of paper with a name and personal information (address, date of birth, social security number, etc.) corresponding to the name on that credit card. That individual – the owner of the card – later told police that it had been "compromised."

The officers took Watkins outside to put her in a squad car and have her transported to the police station. It's a little ambiguous from the record, but it appears that Officers Janiga and Cooley weren't the ones who drove her. Before she was taken, Watkins told them that her coat and backpack were in Harris's truck, and she asked if someone could retrieve the items. I should

---

[2] Watkins was a minor at the time, so she was not named in the indictment. However, both parties identify her by name in their suppression motion briefing, so I don't need to worry about concealing her identity.

note at this point that it seems clear that Officer Janiga knew that Harris had been driving the truck and Watkins was his passenger (although he says that he didn't know if Harris actually owned the vehicle). So there's no suggestion that anyone thought that it was Watkins's truck.

Officer Janiga agreed to get Watkins's items. He went to the truck and gathered the contents from the passenger side. He couldn't find the coat, but he did locate her backpack, a notebook that the officer thought was associated with the backpack and Harris's wallet (which he took for safekeeping and later returned to Harris). As it turned out, the notebook was filled with incriminating information; it listed the personal information of at least a dozen people whose identities had apparently been stolen.

Officer Janiga took the retrieved items back to the station, where he attempted to return the backpack and notebook to Watkins, who was waiting in a conference room for a parent to arrive.[3] She told Officer Janiga that the backpack was hers but insisted that the notebook belonged to Harris. Officer Janiga then went to Harris, who was also at the station. Harris initially declined to give a statement, citing an ongoing criminal fraud case in county court. He then denied that the notebook was his and said that it belonged to Watkins. Officer Janiga continued to ask Harris about the notebook, at which point Harris refused to continue talking and asked for his lawyer. Ultimately, neither Harris nor Watkins claimed the notebook, and I assume that it was turned over by the Munster Police Department to federal investigators.

## Discussion

The Fourth Amendment creates a general presumption against warrantless searches. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *United States v. Rivera*, 825 F.2d 152, 156 (7th

---

[3] Because Watkins was a minor, the police could not arraign her without a parent or guardian present.

Cir. 1987). It's well-settled, however, that a search conducted with the defendant's consent falls outside this general rule.[4] *See United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005). Similarly, pursuant to the "automobile exception" to the Fourth Amendment warrant requirement, arresting officers are permitted to search a stopped car even without a warrant if "there is probable cause to believe that the search will uncover contraband or evidence of crime." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005); *accord United States v. Hines*, 449 F.3d 808, 813 (7th Cir. 2006).

So what happens if law enforcement officers search a car without consent or probable cause? Well, in that case, it will be inadmissible under the exclusionary rule. *See United States v. Clinton*, 591 F.3d 968, 971 (7th Cir. 2010). The rationale behind the exclusionary rule is essentially punitive. "The rule is calculated to prevent, not to repair. Its purpose is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it." *Brown v. Illinois*, 422 U.S. 590, 600 (1975); *accord United States v. Green*, 111 F.3d 515, 523 (7th Cir. 1997). And while an officer's good faith in undertaking a warrantless search is normally not a defense to application of the exclusionary rule, *see United States v. Scales,* 903 F.2d 765, 767-68 (10th Cir. 1990) (discussing general rule), the intended purpose of the rule is something that needs to be kept in mind.

In any event, as I noted above, Harris argues that Officer Janiga impermissibly searched his truck when he removed the notebook in question. I must answer three questions to determine

---

[4] It's also well-recognized that police can conduct a warrantless search of an impounded vehicle to inventory and secure the contents of that vehicle. *See United States v. Cartwright*, 630 F.3d 610, 613-14 (7th Cir. 2010). In this case, however, the government doesn't claim that it conducted an "inventory search" of Harris's car – which is understandable, because the car remained at the bank and wasn't impounded.

if he's right and the notebook should be suppressed. First, was Officer Janiga's removal of Watkins's items even a "search" as envisioned by the Fourth Amendment? Second, if so, did Watkins's request that he retrieve her coat and backpack constitute sufficient consent to that search? And third, if it was a search and Watkins didn't or couldn't consent, would Officer Janiga have had probable cause to search the truck anyway?

### Was Janiga's Removal of Watkins's Items a Search?

The government argues as a threshold matter that Officer Janiga didn't engage in a search because he was retrieving Watkins's items and not looking for evidence. I disagree with this theory.

"While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class*, 475 U.S. 106, 114-15 (1986). In other words, if a police officer intrudes on the interior airspace of a vehicle, that generally will be a "search" for Fourth Amendment purposes. *See, e.g., United States v. Jones*, 132 S. Ct. 945, 952 (2012) ("In *Class* itself... we concluded that an officer's momentary reaching into the interior of a car constituted a search."); *United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993) (noting that the intrusion of a the interior airspace of a vehicle is a search); *United States v. Montes-Ramos*, 347 Fed. App'x 383, 388-89 (10th Cir. 2009) ("We conclude a police officer's intentional act of intruding a vehicle's air space, even if by only a few inches, constitutes a search within the meaning of the Fourth Amendment.").

The government counters by noting that Officer Janiga wasn't looking for any evidence – he was retrieving Watkins's personal items as she requested. Therefore, the reasoning goes, his intrusion of Harris's car's airspace wasn't a search in this case. Notably, the government fails to

6

cite *any* authorities supporting its theory that it isn't a search if an officer enters a stopped car for some purpose other than snooping around for evidence. That's probably because there aren't any (at least that I could find). It's black letter law that an officer's intent is irrelevant to the determination of whether a search has occurred. *See United States v. Mann*, 592 F.3d 779, 784 (7th Cir. 2010); *Platteville Area Apt. Ass'n v. City of Platteville*, 179 F.3d 574, 580 (7th Cir. 1999); *see also Class*, 475 U.S. at 114-15. *Why* an officer violates a reasonable expectation of privacy doesn't matter. It's still a search for Fourth Amendment purposes.

Therefore, once Officer Janiga opened the door and reached into Harris's vehicle, he was conducting a search under the Fourth Amendment. And similarly, by retrieving the notebook, this was a seizure under the Fourth Amendment.

Watkins's Consent

The government's next argument is that any search was permissible because Watkins effectively consented to it by asking Officer Janiga to get her items for her. The obvious hurdle with this assertion is that it wasn't her truck to consent to be searched. The government tries to circumvent this objection by analogizing a passenger of a vehicle to a co-tenant or co-occupant of a residence. In that scenario, it correctly says, the consent of one tenant or occupant will be sufficient to authorize a search of the entire premises, even if the other tenants or occupants might object. *See, e.g., Georgia v. Randolph*, 547 U.S. 103, 113 (2006)*; United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008).

The main problem with this line of reasoning is that there's no need for an analogy. Courts commonly resolve cases involving the question of whether and when someone other than a vehicle's owner can consent to a search. The general rule in that scenario is that the consenting person must have apparent authority over the vehicle. *See United States v. Crowder*, 588 F.3d

929, 935-36 (7th Cir. 2009); *United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008); *United States v. Powell*, 929 F.2d 1190, 1196 (7th Cir. 1991). This inquiry, in turn, focuses on the issue of control – basically, whether the consenting non-owner is able to access and operate the vehicle. *See Crowder*, 588 F.3d at 935-36; *Powell*, 929 F.2d at 1196.

There's absolutely no suggestion here that Watkins had apparent authority over Harris's truck. Officer Janiga testified that he was aware that Harris was the driver, and although he was never told who the owner was, Watkins certainly never claimed ownership. Moreover, it's not entirely clear from his testimony, but it appears that Officer Janiga went to the passenger side of the truck to retrieve Watkins's items, which at least suggests that he must have been aware that she was only a passenger in the vehicle.

Based on all of this, I must conclude that Watkins never exhibited any apparent authority over Harris's truck. Therefore, her consent is irrelevant. If Officer Janiga wanted to enter the vehicle and remove any items – whether to give them back to Watkins, or to use them for evidence, or to collect them for safekeeping – he needed to either get a warrant, obtain Harris's consent as the apparent owner of the truck, or have probable cause to do it, which is the issue I take up next.

The Automobile Exception and Probable Cause

Now for the last of those – the automobile exception and that probable cause. There is an initial question of whether the government has sufficiently raised this argument. The sole mention in its brief is a recitation of the facts surrounding Watkins's and Harris's arrest, followed by the conclusory statement, "Moreover, the officers had probable cause to search the defendant's vehicle based upon this information." (DE 316 at 6.) Counsel fleshed this argument out a little at oral argument, though even that consisted of only three sentences:

> So, even if the Court were to assume this was a search, it was reasonable for the officers to believe that if Willie Harris drove the – drove Darrielle Watkins there, and it was for the express purpose of her to go into this bank to obtain that cash advance fraudulently on Mr. Sulzman's bank credit card, that there might be some other material inside that vehicle relating to it including in her backpack.
>
> Since the notebook was under her backpack , and she requested that he retrieve it, it was reasonable for them to believe there might be something in that car.
>
> So, even if Detective Janiga didn't believe that, it was reasonable for him to go into that vehicle and take anything that belonged to that Defendant who at that time was under arrest which was Darrielle Watkins.

(DE 325 at 32:3-16.) By raising the issue in its brief, and then by making the argument at the motions hearing, I think this is enough to have preserve the issue. So I'll move on to the question of whether there was probable cause for Officer Janiga to search Harris's car given the facts and circumstances surrounding Watkins's and Harris's arrest.

"Under the 'automobile exception' to the warrant requirement, police officers may search a vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence of criminality." *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997); *accord Ochana v. Flores*, 347 F.3d 266, 270-71 (7th Cir. 2003). Probable cause to search will exist when there's a fair probability that the searching officer will find contraband or evidence of illegal activity at a specified location based on the totality of the circumstances. *See United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004); *United States v. McClinton*, 135 F.3d 1178, 1183 (7th Cir. 1998).

I should address one thing from the outset. There's absolutely no suggestion in this case that Officer Janiga entered Harris's truck because he thought that it was reasonably likely that contraband might be in there. To the contrary, everyone seems to agree that he went into the truck to retrieve Watkins's items per her request. But that is really neither here nor there because

9

probable cause is an *objective* – not subjective – standard. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010) ("The Supreme Court has made clear that the probable cause inquiry is an *objective* one; the subjective motivations of the officer do not invalidate a search otherwise supported by probable cause" (emphasis in original).). In other words, it doesn't matter whether the officer in question actually believes that there might be evidence of a crime in the car. He or she just must be aware of facts sufficient for a reasonable person to think so. *Id.*; *Williams v. Rodriguez*, 509 F.3d 392, 398-99 (7th Cir. 2007).

So were the facts known to Officer Janiga in this case sufficient for a reasonable person to believe that Harris's truck probably contained evidence related to Watkins's attempted credit card fraud? That's a close question. On the one hand, almost all of the Seventh Circuit probable cause decisions that I have found involve situations in which the arresting officer had a concrete reason to believe that there was a specific and identifiable type of evidence in the car. An officer smelled marijuana from outside the car, *see United States v. Franklin*, 547 F.3d 726, 734-35 (7th Cir. 2008), or an informant told police in advance that the car would contain contraband, *United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009), or the police observed someone get in his car after leaving a suspected drug transaction. *See United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011). And there's nothing that specific in this case.

But there is something unique about the crime of identity theft that makes this case a little bit different from run-of-the-mill cases. Watkins was arrested for stealing someone else's identification and attempting to withdraw money from the bank using that ID. An important piece of evidence in any identity theft case is anything that might prove the true identity of the person who just got caught (allegedly) trying to use someone else's ID. Officer Janiga knew that Watkins' backpack was in the car; after all, that is what she asked him to retrieve. A reasonable

officer would strongly suspect that the car in general, and the backpack and notebook in particular, could contain evidence indicating the real identity of the would-be identity thief – in this case Watkins. That would have given Officer Janiga probable cause to enter the truck and seize any items that could aid in identifying the person that he has in custody.

That's not all. Watkins was arrested with two fraudulent credit cards, but she only had personal information corresponding to one of them. It's not unreasonable to think that a piece of paper with personal information for the other card might be in the truck. More broadly, Watkins was arrested at a bank with multiple fraudulent credit cards and related paraphernalia. I'm not convinced that this scenario wouldn't be enough on its own for a reasonable police officer to believe that there might be additional evidence of her crime in the vehicle that drove her there.

In sum, while it may be a close call, at a minimum, there certainly was probable cause to believe that the car contained evidence to identify Watkins, and that sort of proof that she wasn't who she was purporting to be inside the bank obviously would be useful evidence in a prosecution for identity theft.

In arriving at this conclusion, it's important to return to the underlying purpose of the exclusionary rule, which is to deter police from undertaking impermissible warrantless searches. But that rationale is wholly inapplicable here. Officer Janiga didn't enter Harris's car to snoop around for evidence. He did it to retrieve an arrestee's personal items pursuant to her request. That's not exactly the type of police conduct that we are trying to deter. As the Seventh Circuit has observed:

> We are well aware of the fact that there are competing interests at stake when courts are called upon to decide whether or not to exclude evidence as a remedy for a violation of the Fourth Amendment's reasonableness requirement. Obviously, we are in full agreement with the underlying purpose of the

11

> exclusionary rule: to deter illegal police conduct by punishing the behavior and removing the incentive for its repetition.
>
> On the other side of the ledger, it is beyond dispute that the exclusion of evidence as a deterrent to police misconduct involves significant social costs. The exclusionary rule by definition deprives courts and juries of probative evidence of a crime, and thereby offends the important societal interest in prosecuting, punishing, and deterring criminal conduct.
>
> The appropriateness of applying the exclusionary rule to a particular case is in large part the product of weighing and balancing these competing interests.

*United States v. Espinoza*, 256 F.3d 718, 724-25 (7th Cir. 2001) (citations omitted). This captures my concern nicely. It just isn't sensible to suppress evidence in a close case when the primary purpose of the exclusionary rule wouldn't be served one iota.

<u>*Gant* and Searches Incident to Arrest</u>

The second reason that I'm going to err on the side of not suppressing the incriminating notebook is that I'm not sure that probable cause is even the appropriate standard to apply to the warrantless search of an arrestee's car that uncovers evidence of the arresting offense. Instead, it's at least arguable that in that scenario, police have broader authority to conduct a search incident to arrest.

In 2009, in *Arizona v. Gant,* 556 U.S. 332 (2009), the Supreme Court attempted to clarify what does – and doesn't – constitute a permissible search incident to arrest. The Court first held that safety-related searches were limited to situations in which an unsecured passenger is within reaching distance of the passenger compartment. *Id.* at 343. But that's not all. It went on to say that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest *might* be found in the vehicle.'" *Id.* at 343-44 (2009) (*quoting Thornton v. United States*, 541 U.S. 615, 632 (2004)) (emphasis added).

12

What this language actually means turns out to be a very complicated – and unsettled – question. *See, e.g., see Megginson v. United States*, 129 S. Ct. 1982, 1982 (2009) (Alito, J., dissenting from decision to grant, vacate, and remand) ("This case thus appears to present an important question regarding the meaning and specificity of the reasonable suspicion requirement in *Gant*. Because of the ambiguity of the new *Gant* test and the frequency of roadside arrests, I would grant *certiorari* in this case to provide much needed clarification."). Some courts – including the Seventh Circuit on two occasions – essentially read that part of *Gant* to merely confirm the validity of the longstanding automobile exception to the search warrant requirement (which, as discussed above, requires probable cause). *See United States v. Martin*, 360 Fed. App'x 686, 689 (7th Cir. 2010); *see also United States v. Stotler*, 591 F.3d 935, 939 (7th Cir. 2010). Other courts – *also* including multiple Seventh Circuit panels – construe the "reasonable to believe" language to imply a separate and distinct exception. *See United States v. Smith*, 697 F.3d 625, 630-31 (7th Cir. 2012); *United States v. Slone*, 636 F.3d 845, 852 (7th Cir. 2011).

The confusion doesn't end there. Assuming the latter position is the better one (and it seems to be the majority view), courts are all over the map in determining what offenses and specific factual circumstances will make it reasonable to believe that evidence relevant to the offense of arrest might be found in an arrestee's car. *See, e.g., Thomas v. Plummer*, 489 Fed. App'x 116, 120-22 (6th Cir. 2012) (cataloguing cases); Wayne R. LaFave, *Gant and "offense-related evidence*," 3 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 7.1(d) (5th ed.) (same). With respect to some offenses – like driving while under the influence of alcohol – courts generally view it as *ipso facto* reasonable to think that there might be offense-related evidence (*e.g.*, an alcohol container, in that case) in the vehicle. *See Thomas*, 489 Fed

13

App'x at 121-22.  Other offenses – like a routine traffic violation – won't support that presumption.

I'm not going to get too immersed in this debate, because for the purposes of the suppression motion, I don't have to.  It's enough to say that whatever the scope of the "reasonable suspicion" warrant exception is, it's more lenient than the automobile exception's probable cause requirement.  "Presumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant*'s evidentiary rationale would merely duplicate the 'automobile exception,' which the Court specifically identified as a distinct exception to the warrant requirement."  *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010).

And recall how I previously concluded that the question of whether or not Officer Janiga had probable cause to think that their might be evidence in Harris's truck was a close one that perhaps could go either way.  Well, if the likelihood that there would be contraband in the vehicle is right at the line of what will constitute probable cause, and the *Gant* reasonableness standard is a relaxed one compared to that test, then it seems pretty clear that Officer Janiga's search necessarily must clear the lower hurdle.

Therefore, I conclude that Officer Janiga was aware of facts and circumstances sufficient for a reasonable person to have probable cause to think that there was evidence in Harris's truck.  Even if not, it certainly was reasonable for him to believe that evidence related to Watkins's attempted credit card fraud and identity theft might be in the vehicle pursuant to the relaxed *Gant* standard.  For all of the foregoing reasons, then, the Motion to Suppress (DE 306) is **DENIED**.

**MOTION TO DISMISS FOR IMPROPER VENUE**

Harris's Motion to Dismiss for Improper Venue (DE 308) essentially argues that all acts involving Harris that are specified in the indictment that occurred in the Northern District of Indiana were preparatory acts, and therefore, they can't provide a sufficient basis for venue. I disagree.

**Relevant Background**

The indictment in this case paints a picture of a massive conspiracy to commit credit card and bank fraud spanning multiple states. Many of the activities related to that fraud – including activities specifically involving Harris – allegedly occurred in Northern Indiana. For example, Paragraph 23 of the indictment alleges that Harris fraudulently obtained $3,800 from a bank in Munster, Indiana on or about November 9, 2007. Similarly, Paragraph 32 alleges that Harris and an unindicted co-conspirator attempted to fraudulently obtain a $5,000 cash advance from another Munster bank on or about April 7, 2008, which is apparently the Chase Bank incident involving Harris and Watkins described above. The indictment also includes numerous allegations of criminal activities committed by other members of the purported conspiracy that occurred in Gary, Merrillville and Schererville.

**Discussion**

Title 18, United States Code Section 3237(a) specifies what venue will be proper with respect to offenses spanning multiple states and/or districts:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a). This generally means that "[f]or crimes that occur in more than one state or district, venue is constitutionally and statutorily proper in any district in which part of the crime was committed." *United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000); *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir. 1999).

Harris acknowledges this general rule, but he notes that merely preparatory acts occurring in a particular jurisdiction will not be sufficient to convey venue. *See United States v. Muhammad*, 502 F.3d 646, 653 (7th Cir.2007); *Tingle*, 183 F.3d at 726. Harris goes on to say that his alleged involvement in the conspiracy described in the indictment falls in this category.

That doesn't make sense. Let's set aside the voluminous activities that involved Harris's alleged co-conspirators occurring in Northern Indiana, which likely would be sufficient on their own to establish venue. As noted above, the indictment specifically alleges that *Harris himself* attempted to fraudulently obtain cash advances on two occasions (once successfully, and once not) in Munster, Indiana. That's more than enough to conclude that venue is proper in this district; indeed, venue will be proper in *any* district in which an overt act in furtherance of a conspiracy occurs. *See United States v. Pearson*, 340 F.3d 459, 467 (2003), *rev'd on other grounds*, 543 U.S. 1097 (2005); *United States v. Molt*, 772 F.2d 366, 369 (7th Cir. 1985).

Therefore, this Court is a constitutionally permissible and statutorily proper venue for the case before me. Harris's Motion to Dismiss for Improper Venue (DE 308) is **DENIED**.

## MOTION TO DISMISS FOR SELECTIVE PROSECUTION

This takes me to the final motion that I'll resolve in this opinion – Harris's Motion to Dismiss Due to Selective Prosecution. (DE 309.) Harris basically argues that he is being treated unfairly because the government has decided to prosecute him and not a number of unindicted co-conspirators identified in the indictment. I won't waste much time on this.

"[S]elective prosecution requires a showing that the defendant '(1) ... [was] singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights.'" *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996) (*quoting United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir. 1994)). The main problem that Harris faces here is that he fails to even *suggest* – much less show – that the government has decided to prosecute him based on his race or religion or the like.

The reason for that, no doubt, is that there simply wasn't intent to single out Harris based on an arbitrary classification. Indeed, there seems to be no intent to discriminate against Harris for *any* reason. The government indicted seven other defendants, so Harris is hardly alone. And while the indictment does mention a number of unnamed co-conspirators, the government has a pretty good explanation for that. With respect to some, it says, they are Harris's unknown accomplices. With respect to others (like Watkins), they were minors who generally can't be prosecuted in federal court.

Perhaps Harris thinks that this story is a pretext, and the government really is going after him (and, presumably, his co-defendants) for some improper discriminatory reason. But he doesn't say that, and he certainly hasn't produced any evidence to support that sort of claim. Therefore, his Motion to Dismiss due to Selective Prosecution (DE 309) is **DENIED**.

**SO ORDERED.**

ENTERED:   April 18, 2013.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
